## JOSEPH M. DINWIDDIE

*v.*

## ELIZABETH BELL *et al.*

*Filed at Mt. Vernon June 14, 1880.*

1. CHANCERY—*relief as against voluntary acts of party.* Where one of two joint grantees of land consents that the joint deed may be surrendered, and that the grantor may convey the premises to the other party alone, the party so assenting must abide by what may be done in the way of changing the title, and can have no equitable right to the interposition of a court of equity to enable him to retract, no matter whether the arrangement was because the land before really belonged to the party receiving the new deed, or the interest of the other party yielding up the title was disposed of to him, or it was done in order to shield the land from apprehended pecuniary liability.

2. SAME—*retaining case to adjust all matters—relief according to the scope of the pleadings.* One of the children and heirs at law of a deceased person exhibited his bill in chancery, claiming a one-half interest in certain of the lands of which the ancestor died seized of the legal title, the claim being based upon an alleged joint ownership between the complainant and his father in the lifetime of the latter. On error, upon a dismissal of the bill, it was insisted by the complainant that as he was at least a tenant in common with the other heirs in the lands, the court, having jurisdiction of the subject matter and of the parties, should have retained the bill, and done complete justice between the parties by making partition. But it was held otherwise, as the bill was not framed with any view to a partition, and no partition was asked.

WRIT OF ERROR to the Circuit Court of Bond county.

Messrs. VAN HOOREBEKE & FORD, for the plaintiff in error:

This suit was brought by plaintiff in error against the heirs of James P. Dinwiddie, who died in 1875. Therefore, George

Dinwiddie, Mary E. Enloe and Harriet Enloe, half brother and sisters of the plaintiff in error, and their husbands, whose depositions were read, were incompetent witnesses, and their testimony should have been excluded, except in so far as they testify to conversations since the death of the said James P. Dinwiddie. Rev. Stat. 1874, p. 58, sec. 2; *Merrill et al.* v. *Atkins*, 59 Ill. 19; *Reeves* v. *Herr*, id. 81; *Connelly et al.* v. *Dunn et al.* 73 id. 218; *Crane* v. *Crane et al.* 81 id. 165; *Galbraith* v. *Crain et al.* 84 id. 379.

While the bill may be somewhat inartistically drawn, it is broad enough to give all the relief sought—if not all, at least a part. Even though the complainant states his interest in the premises too large, yet the court would grant him the relief sought to the extent of his interest; and though he may not be entitled to the relief specifically sought, yet he is entitled to any relief consistent with the case made, under the general prayer. *McNab* v. *Heald et al.* 41 Ill. 326; Adams' Eq. 649.

Upon the first branch of the case the court erred in not retaining the case and adjusting the equities of the parties, even to the partition of the premises among the heirs. Freeman on Co-Tenancy and Partition, sec. 443; 1 Story's Eq. Jur. sec. 674.

This, being a bill for a partnership account, should have been referred to the master to state the account. *Moss* v. *McCall*, 75 Ill. 190; *King* v. *Hamilton*, 16 id. 190; *Fairchild* v. *Fairchild*, 64 N. Y. 471.

Mr. D. H. KINGSBURY, and Mr. WM. H. DAWDY, for the defendants in error:

The plaintiff in error is not suing as an heir of his father, but bases his right to relief on the ground of a joint purchase with his father of the lands from Griffith; hence all the heirs of his father who are defendants are competent witnesses.

It is insisted the bill should have been retained and partition made. The bill did not ask for partition,—it was not

filed for that purpose,—entirely different relief was sought; and, now, can plaintiff in error be heard to ask for partition, that he may save costs made in seeking different relief? The bill charges the insolvency of the estate of James P. Dinwiddie; hence, from his own showing, partition of the forty-six acres could be of no benefit to him, save to impose the costs made upon defendants in error, who have never denied him any lawful interest he may have in his father's estate.

Again, we insist that even if the description of the land was correct in the first deed, yet, if the same was destroyed and a new deed made to James P., with the knowledge and consent of the plaintiff in error, he would be estopped from coming into a court of equity and asking to have the second deed set aside. See *Carithers et al.* v. *Lays, Admr. et al.* 51 Ala. 390; *Lavender et al.* v. *Lee,* 14 id. 688. He can not allege the loss or destruction of the deed and prove its contents by parol. See *Farrer* v. *Farrer,* 4 N. H. 191; *Thompson* v. *Thompson,* 9 Ind. 323. Plaintiff in error is estopped from taking advantage of his own wrong.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a bill in chancery, filed by Joseph M. Dinwiddie, against the heirs of James P. Dinwiddie, deceased, the complainant being a son of James P., and co-heir with the defendants.

The bill alleges that in 1865 certain lands therein described were bought for the sum of $2000 of one Griffith, jointly by complainant and his deceased father, James P. That Griffith and wife conveyed said lands by warranty deed to said James P. and Joseph M. Dinwiddie, who took actual possession of and owned the lands as tenants in common in equal parts. That in 1867 they sold and conveyed twenty acres of the land to one Richardson. That in the year 1870 James P. represented to Griffith that he and complainant had agreed to a division of the land, and without the knowledge or consent of complainant, induced Griffith and wife to

make a new deed conveying all the lands to him, James P. destroying the former deed made by Griffith and wife, conveying the lands to James P. and complainant, said deed not having been recorded. That complainant paid full value for and is entitled to one-half of these lands.

That in 1869 James P. and the complainant jointly bought five acres of land from one Moss, in addition to the land bought in 1865, and received a conveyance therefor from Moss.

That in 1872 the said James P., for and in consideration of the sum of $3500, sold and conveyed unto one Enloe, his son-in-law, the said lands purchased of Griffith, except the twenty acre tract mentioned as sold to Richardson, and also the undivided half of the land purchased of Moss, and that afterward, in 1872, Enloe and wife, in part payment of the purchase money still unpaid, reconveyed to the said James P. forty-six acres of the Griffith land for the expressed consideration of $1200.

The bill avers that complainant is entitled to the undivided one-half of the land reconveyed by Enloe to James P. Dinwiddie, and also to the undivided one-half of the money received on the sale of the said James P. to Enloe, viz: $2300, and prays for a conveyance and account accordingly.

The circuit court on hearing dismissed the bill, and the complainant brings error.

The evidence is clear that James P. Dinwiddie paid, in fact, the whole of the purchase money for the lands bought of Griffith. The complainant testifies that he furnished to his father one-half of the money. We notice no objection to this evidence, and it is stated none was made. There was other evidence tending to show that complainant was not in such a condition pecuniarily that he could have furnished the money. After the purchase from Griffith, the father, James P., and complainant occupied the place together until 1871. A younger son also lived upon the place with the father, as likewise two daughters. What the relations were between

the complainant and his father in respect to the land,—whether they carried on the farm together in partnership, or whether the management was by the father as owner and complainant lived there as one of the family,—the testimony was conflicting in respect thereto.

We think we need not consider particularly the evidence upon this subject, but may confine our attention to what took place in 1870 and after, when Griffith made the second deed to James P. Dinwiddie, and the complainant left the place.

The evidence shows that in 1870 the complainant became involved in a bastardy proceeding; that in the year 1871 he removed to the State of Missouri, living there some two or three years. He went away, as the witness says, " between two suns." He had given a bastardy bond for a considerable amount. His father and another person who were on his bond had to pay $100 to be released from it, still leaving complainant on the bond.

The second deed from Griffith and wife to James P. Dinwiddie alone, of the lands, bears date August 4, 1870.

The witness Williford testifies to a conversation between complainant and his father, in 1869, witness thinks, in relation to complainant's difficulty, when complainant told his father he might have the deed changed into his name if he was afraid complainant would get into trouble.

The witness Rainey testifies that on August 15, 1870, he went to see complainant about some matters that had taken place between complainant and witness' sister; that complainant told him he was not able to do much for her; that he had let his father have his interest in the land.

The witness House testified that on the 5th or 6th of August, 1870, she had a conversation with complainant, when he said he had no interest in any land except five acres,—the half of five acres was his; he said there was a flaw in the deed and his father had a new one made out in his own name.

The witness Taylor testifies to a conversation with complainant in 1870, when complainant, talking with regard to

some trouble he had with a woman, said if it was not for his wife he could snap his fingers in her face and leave, because he did not own anything.

The testimony justifies the conclusion, we think, that the change in the deed from Griffith to one in the name of James P. Dinwiddie alone was not procured to be done by him clandestinely, without the knowledge or consent of complainant, but that it was done with the latter's assent and acquiescence and by preconcerted arrangement between them, in order that the father might have and hold the lands as his own. If this was so, whether the arrangement was because the land before really belonged to the father, or the son's interest was disposed of to him, or it was done in order to shield the land from apprehended pecuniary liability, in either case complainant must abide by what was done, and can have no equitable title to the interposition of a court of equity to enable him to retract.

To be sure, it somewhat militates against this conclusion what is testified to as having been said by James P. Dinwiddie at the time of the making of the second deed by Griffith to him, namely, that he and the complainant had compromised and complainant was to have his share off of the east end of the farm. This would tend to show the recognition of an interest in the complainant, though nothing definite as to what the compromise was, or what was the share of complainant. Whatever the meaning and force to be attributed to this statement testified to, of James P. Dinwiddie, the conclusion above mentioned, we think, is one which may properly be arrived at, upon the whole testimony in the case. It would have been quite natural that upon removal from the State complainant should have made disposal of whatever interest he might have had in the land, particularly, circumstanced as he was.

It is insisted, however, that the court, having jurisdiction of the subject matter and all the parties, should have gone on and done complete justice between them by making partition;

that, at least, as one of the heirs of James P. Dinwiddie, deceased, complainant had an interest as tenant in common with the other heirs in the forty-six acres of land reconveyed by Enloe to James P. Dinwiddie, and of which the latter died seized; and that complainant's undivided half interest in the five acres purchased of Moss was undisputed; and, therefore, that if no more, there should have been partition made to him of his interest.

The bill made no complaint and asked no relief in respect to this five acres, although it did make mention of its purchase in common by complainant and James P. Dinwiddie.

As to the forty-six acres, no right as heir was asserted in respect to it, and no relief as heir asked. The sole claim asserted and relief asked was as purchaser of one-half of the land from Griffith. The bill was not framed with any view to a partition, and no partition was asked. It is not to be complained of that the court did not make a partition which was unasked.

The decree of the circuit court will be affirmed.

*Decree affirmed.*